# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

James Mark Vogel,

               Plaintiff,

v.

Scot Turner, Aitkin County Sheriff;
Debra Hamilton, Jail Administrator;
Jeremy Swensen, Asst. Jail Admin.;
Janet Larsen, LPN;
Diane Grinde, D.O.C. Rep.; and
Alicia Peterson, Jail Nurse,

               Defendants.

Civ. No. 11-0446 (PJS/JJG)

**REPORT AND RECOMMENDATION**

---

JEANNE J. GRAHAM, United States Magistrate Judge

       This matter is before the Court on various motions by Plaintiff and the County Defendants. Currently before the Court are Plaintiff's "Motion to Court for Order to Parties for Mediation or Arbitration" (ECF No. 78), Motion for Court-Appointed Medical Experts (ECF No. 107), and Motion to Compel Discovery (ECF No. 119). Also before the Court are Defendants Aitkin County Sheriff Scot[1] Turner, Jail Administrator Debra Hamilton, and Assistant Jail Administrator Jeremy Swenson's (collectively "County Defendants") Motion for Summary Judgment (ECF No. 82) and Motion to Strike Pleading (ECF No. 115). These motions have been referred to the Court pursuant to 28 U.S.C. § 636(b)(1)(B). The Court previously dismissed the claims against Defendants Diane Grinde and Janet Larsen for failure

---

[1] Plaintiff's Complaint lists Sheriff Turner as "Aitkin Cty. Sheriff, Scot Turner." Defendant Turner's Memorandum in Support of Summary Judgment spells his name "Scott Turner." Furthermore, nothing in this Report and Recommendation should be construed as to apply to Defendant Alicia Peterson, absent proof of effective service.

to state a claim. (Order 8, Nov. 1, 2012, ECF No. 136.) In this Report and Recommendation, the Court will address claims under Section 1983 for deliberate indifference to Plaintiff's serious medical need in violation of the Eighth Amendment, medical malpractice, and compelled self-incrimination under the Fifth Amendment.[2]

As set forth fully below, the Court recommends Plaintiff's motions be denied, the County Defendants' motion for summary judgment be granted, and the County Defendants' motion to strike be denied as moot.[3]

## I.    BACKGROUND

Plaintiff was arrested on February 16, 2009, and charged with driving while intoxicated. (Jason M. Hill Aff., Ex. A, at 1.) Plaintiff was detained at the Aitkin County Sheriff's Office Jail that day. (Hill Aff. Ex. B.) Upon booking at the jail, Plaintiff underwent a medical screening. (Hill Aff. Ex. C.) During the medical screening, Plaintiff responded that he had "other medical condition[s]" but he would not discuss what those conditions were. (Hill Aff. Ex. C, at 2.) According to the medical screening report, Plaintiff did not report any abdominal pain or any ongoing treatment for abdominal pain. (*Id.*)

During his incarceration, Plaintiff requested medical attention numerous times. Plaintiff's Complaint alleges thirty-three requests for medical care; however, the evidence submitted to the Court in support of the motion for summary judgment reflects fewer medical

---

[2] Plaintiff has indicated Minnesota Statute § 145.682, which requires an affidavit of expert review before pursuing an action based on medical malpractice, is irrelevant to his claims. While that seems to indicate Plaintiff does not wish to assert that claim, he repeatedly refers to malpractice throughout his other submissions. Therefore, construing his pleadings broadly, as the Court must, the Court will consider whether the record supports a claim of medical malpractice.

[3] The Court denies the County Defendants' motion to strike as moot based on the recommendation that summary judgment be granted in the County Defendants' favor. Alternatively, the motion to strike the memorandum is denied on the merits.

requests. (Hill Aff. Exs. D2, D3, D4.)[4] Of the requests, five pertain to abdominal pain due to the presence of a lump or other explicit pain. (Ex. D2, at 6; Ex. D2, at 11; Ex. D2, at 25; Ex. D3, at 5; Ex. D3, at 7.) Plaintiff made other medical requests related to unexplained weight gain, and ineffective stool softener, which could be construed as related to abdominal pain. (Hill Aff. Ex. F, at 1; Hill Aff. Ex. D3, at 5; *id.* at 7.) Finally, Plaintiff made numerous other requests related to reading glasses, his thyroid problems, psychiatric problems, and dental problems, as well. Because those requests for medical attention are not relevant to Plaintiff's claim, which centers on his undiagnosed cancer, the Court does not consider every request for medical attention relevant.

### A. Plaintiff's Medical Requests in Aitkin County Jail

In his first request for medical assistance, on March 12, 2009, Plaintiff reported side pain which he originally stated "was connected to [his] hep[atitis] c." (Hill Aff. Ex. D2, at 6.) Plaintiff indicated he had trouble laying on his side and also recounted psychological problems related to depression and bipolar disorder. (*Id.* at 6-7.) In response to this medical request, Defendant Peterson referred Plaintiff to Defendant Larsen. (*Id.* at 6.)

On April 2, 2009, Plaintiff reiterated that he needed his "side looked at." (*Id.* at 11.) Plaintiff also indicated: "I've told you about this numerous times and its [sic] getting worse. Its [sic] either a kidney stone or cancer. I told you I had to go to the doctor on my own when I was out and I need this looked at please." (*Id.*) When Defendant Peterson saw Plaintiff on April 7, 2009, Plaintiff indicated the pain had migrated primarily to his back and that it was a

---

[4] None of the County Defendants' exhibits contain any uniform page numbers or Bates numbering, despite being voluminous. In some cases, Defendants filed multiple exhibits as a single electronic attachment. Accordingly, the Court refers to the page number as it appears on the Court's electronic filing system. Furthermore, Exhibit D was uploaded to the electronic filing system as four separate attachments; the Court will identify the exhibit as D1, D2, D3, and D4.

steady dull pain. (*Id.*) He further indicated that laying on his side caused him pain and that the pain had persisted since October. (*Id.*) Plaintiff reported lifting weights which did not affect the pain. (*Id.*) Defendant Peterson referred Plaintiff to Defendant Larsen again.

Plaintiff's next complaint specifically regarding stomach or abdominal pain occurred on July 1, 2009, at which time he explained: "I have a lump on my side now where I kept telling you it hurt[.]" (*Id.* at 25.) The medical request form submitted in connection with this visit is partly illegible; however, Defendant Peterson indicated her intention to contact jail administration and recommend further evaluation of Plaintiff's complaints. (*Id.*) Following this recommendation, Defendant Larsen treated Plaintiff. At his appointment with Defendant Larsen, Plaintiff indicated that "pain had kind of come and gone but has been increasingly persistent over the past week. . . ." (Hill Aff. Ex. D3, at 2.) Plaintiff further acknowledged that the pain started when he began to feel constipated. (*Id.*)

On August 4, 2009, Plaintiff filed another request for medical attention regarding the lump in his side. (*Id.* at 5.) Plaintiff complained that he still had the lump, the prescribed stool softener was not working, and Plaintiff still had pain in his side. (*Id.*) Defendant Peterson noted Plaintiff experienced diarrhea when taking the stool softener twice daily and that the pain in his side increased with meals and decreased after Plaintiff's bowel movements. (*Id.*) Defendant Peterson discussed Plaintiff's symptoms with Defendant Larsen and adjusted Plaintiff's medication regimen. (*Id.*)

Finally, on August 12, 2009, Plaintiff complained that the stool softener was not effective and the lump in his side still hurt. (*Id.* at 7.) Defendant Peterson indicated that Plaintiff had only two bowel movements since his last appointment and that the stool softener was indeed not working. (*Id.*) Plaintiff began a new medication, Senna, and remained on that

medication until he was discharged from Aitkin County Jail on August 20, 2009. (*Id.*; Hill Aff. Ex. D4, at 18.)

### B.    Plaintiff's Treatment Outside Aitkin County Jail

On October 22, 2008, prior to his incarceration, Plaintiff saw Dr. Les Lofgren at HealthPartners – Central Minnesota Clinics in St. Cloud, Minnesota. (Hill Aff. Ex. H, at 2.) In addition to his chief complaint of hepatitis C, Plaintiff reported intermittent "occasional right upper quadrant side pain." (*Id.* at 3.) Dr. Lofgren noted that firmness in the left upper quadrant did not appear to be fixed and that it could be stool. (*Id.*) Dr. Lofgren noted that Plaintiff's abdomen was soft, non-tender, and was without masses. (*Id.*) Plaintiff underwent an ultrasound on December 15, 2008. (*Id.* at 23.) The ultrasound revealed a normal-sized liver, gallbladder, pancreas, and kidneys. (*Id.*) The ultrasound did not uncover any significant abnormalities, aside from "mild splenomegaly." (*Id.*)

On January 22, 2009, Plaintiff was treated by Dr. Heidi Olson, M.D., of Wadena Medical Center. (Hill Aff. Ex. F, at 1.) Plaintiff reported "no abdominal pain." (*Id.*) Plaintiff presented with diarrhea and concerns about his thyroid. (*Id.*) Plaintiff attributed his thyroid complaints to his inability to lose weight, even if abstaining from food for a full week. (*Id.*) Furthermore, in response to Plaintiff's request for information, Dr. Olson wrote a letter dated April 5, 2009, to Plaintiff, recapping the January 22 appointment. (Hill Aff. Ex. E.) At no point in the letter did Dr. Olson mention abdominal pain. Dr. Olson's letter began with the following sentence: "I did receive your letter dated 3/28/2009 regarding [a] treatment plan for your hepatitis C while you were incarcerated." (*Id.*)

Plaintiff submitted two letters as attachments early in this litigation in support of an appeal of this Court's Order denying recalculation of the appropriate filing fee. In the first

letter, Dr. Stephen Ansell, M.D., Ph.D., responded to an inquiry submitted by Plaintiff. (James Mark Vogel Aff., Ex. 1, at 2, ECF No. 20-1.) It is unclear exactly who Dr. Ansell is, other than a doctor who appears to have treated Plaintiff's mantle cell lymphoma. The letter indicates the following: "mantle cell lymphoma is an incurable disease for which treatment is used to control the disease but unfortunately not cure it"; "[treatment] will not prevent the cancer from subsequently returning"; "[n]one of the known therapies at this time are able to cure the disease. Therefore, catching the cancer early is not able to cure the disease."; "It is not clear . . . that making a diagnosis earlier would have been more beneficial[;] . . .an earlier diagnosis would not have allowed us to cure the cancer." (*Id.*)

The second letter Plaintiff submitted is from Dr. James Shanks, M.D., a doctor with HealthEast Cancer Care. (*Id.* at 3.) Dr. Shanks acknowledges Plaintiff was diagnosed with mantle cell lymphoma, a type of Non-Hodgkin Lymphoma in September 2009. (*Id.*) Dr. Shanks noted Plaintiff underwent chemotherapy in April 2010 and had an autologous bone marrow transplant at the Mayo Clinic in August 2010. (*Id.*) Dr. Shanks advised that the average survival of a patient with mantle cell lymphoma is four to five years with relapse occurring after two to three years. (*Id.*) Dr. Shanks noted Plaintiff will die from the disease and predicting relapse timing is difficult. (*Id.*)

The record contains evidence of other visits with both Dr. Lofgren and Dr. Olson. It appears from the record that Plaintiff did not seek further treatment for his abdominal pain from either doctor. Instead, most of Plaintiff's future visits revolved around pain related to a broken tooth. In other visits, Plaintiff either failed to mention his abdomen or reported no abdominal pain.

## II.     DEFENDANTS' MOTIONS

## A.     Motion for Summary Judgment (ECF No. 82)

The County Defendants offer numerous bases for granting their motions for summary judgment. First, the County Defendants assert Plaintiff has failed to establish each element of the Eighth Amendment violation set forth in the Complaint. Second, the County Defendants contend Plaintiff's Fifth Amendment claims are premature and precluded by Supreme Court precedent. Third, the County Defendants maintain their entitlement to qualified immunity. Fourth, the County Defendants argue Plaintiff's claims are ineffectual as they are against the County Defendants in their official capacity, which is equivalent to asserting claims against Aitkin County. Fifth, and finally, the County Defendants claim official immunity. The Court will address each of the claims on their merits before moving on to a discussion of qualified and official immunity.

### 1.     Standard of Review

A court should grant summary judgment where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A court may not grant summary judgment if there is a genuine issue of material fact. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must view all reasonable inferences in the light most favorable to the nonmoving party. *Enter. Bank*, 92 F.3d at 747.

While both the burden of showing there is no genuine issue of material fact and that it is entitled to judgment as a matter of law is on the moving party, *id.*, the nonmoving party "must show through the presentation of admissible evidence that specific facts exist creating a

genuine issue for trial," *3M Co. v. Intertape Polymer Grp., Inc.*, 423 F. Supp. 2d 958, 961 (D. Minn. 2006) (Tunheim, J.) (citing *Krenik v. County of Le Seur*, 47 F.3d 953, 957 (8th Cir. 1995)) (other citations omitted). A plaintiff may not defeat summary judgment by merely submitting self-serving affidavits. *Conolly v. Clark*, 457 F.3d 872, 876 (8th Cir. 2006) (citing *Davidson & Assocs. v. Jung*, 422 F.3d 630, 638 (8th Cir. 2005)) ("However, a properly supported motion for summary judgment is not defeated by self-serving affidavits."). On the contrary, a plaintiff opposing summary judgment must "substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor." *Jung*, 422 F.3d at 638.

Plaintiff's opposition to the County Defendants' motion is a mostly repetitive re-recitation of the facts alleged in the Complaint and throughout this lawsuit. Plaintiff summarily recounts his treatment with Drs. Lofgren and Olson and repeats his allegation that he informed jail staff of his dental and medical problems when he was originally detained. Furthermore, Plaintiff relies on the standard for defeating a motion to dismiss (Pl.'s Mem. Opp. Summ. J. at 4), which is inapplicable to the motion before the Court.

### 2. Eighth Amendment

It is a violation of the Eighth Amendment to act with deliberate indifference to a prisoner's serious medical need. *Estelle v. Gamble*, 428 U.S. 97, 104 (1976). It is irrelevant whether such violation occurs through the actions of prison doctors or prison guards, or through the intentional denial of, intentional interference with, or delayed access to medical care. *Id.* at 104-05.

To establish a prison official's deliberate indifference to a serious medical need, a prisoner must demonstrate: "(1) a substantial risk of serious harm to the inmate existed and

(2) the prison official knew of and disregarded that risk." *Robinson v. Hager*, 292 F.3d 560, 563-64 (8th Cir. 2002) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). To establish such a violation, a plaintiff must demonstrate both an objective and subjective component. *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997) (citing *Choate v. Lockhart*, 7 F.3d 1370, 1373 (8th Cir. 1993)); *see also Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). An imperative prerequisite to success on this claim is that the prison officials "knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge." *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996). The corollary to that requirement is the necessary implication that negligent failure to diagnose and negligent treatment are insufficient to support a claim under the Eighth Amendment. *See Estelle*, 429 U.S. at 105-06; *Bellecourt v. United States*, 994 F.2d 427, 431 (8th Cir. 1993); *see also Domino v. Texas Dep't of Crim. Justice,* 239 F.3d 752, 755 (5th Cir. 2001) ("It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference.").

In light of the facts supported by the record, there is no evidence any of the County Defendants affirmatively knew Plaintiff suffered from cancer. Instead, the record reflects a genuine belief that Plaintiff suffered from constipation. The Court need not exhaustively recount each visit with Defendant Peterson or referral to Defendant Larsen because, having set forth the details above, it is clear that no prison official had actual knowledge of Plaintiff's serious illness. On the contrary, there is no evidence that any Defendant knew Plaintiff had cancer.

Plaintiff argues the County Defendants should have known his condition was more serious than mere constipation based on its persistence and the ineffectiveness of the milk of

magnesia Defendant Larsen prescribed. Even accepting Plaintiff's argument that the County Defendants should have diagnosed the cancer earlier because the symptoms were more serious than their original diagnoses, the Court would be left with Plaintiff's acknowledgment that the County Defendants *did not* affirmatively know and, therefore, could not deliberately disregard Plaintiff's serious need. Indeed, the County Defendants' decision to forgo ordering tests does not represent cruel and usual punishment. *See Estelle*, 429 U.S. at 105-07 ("A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice, and as such the proper forum is the state court . . .").

Likewise, if Plaintiff's claim is that the County Defendants' approximately six-month delay in providing adequate treatment harmed him, the claim must be supported by "verifying medical evidence . . . to establish the detrimental effect of delay." *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997). The only evidence in the record bearing on the effect of delay, the letters from Drs. Ansell and Shanks,[5] submitted by Plaintiff, indicate that earlier discovery would have no appreciable effect on Plaintiff's condition. In fact, Dr. Ansell's letter explicitly says: "[C]atching the cancer early is not able to cure the disease." (Vogel Aff., Ex. 1, at 2, ECF No. 20-1.)

Because Plaintiff has failed to offer any evidence in the record that affirmatively establishes the County Defendants knew of Plaintiff's serious medical condition and deliberately disregarded it by delaying treatment or depriving Plaintiff of treatment, the Court recommends judgment be entered in favor of the County Defendants.

---

[5] The Court does not accept these letters as expert opinions. Rather, the Court is undertaking as full a review of the record as possible to ensure Plaintiff's pro se status does not unfairly hinder the prosecution of this matter.

### 3. Medical Malpractice

To succeed on a claim of medical malpractice, the Court looks to Minnesota state law. *Ellingson v. Walgreen Co.*, 78 F. Supp. 2d 965, 968 (D. Minn. 1999) (Rosenbaum, J.). Included in Minnesota's law is the requirement that a plaintiff asserting a medical malpractice claim provide an affidavit of expert review. *See* Minn. Stat. § 145.682. Specifically, Plaintiff must attach an affidavit stating that an expert has reviewed the facts of the case and one or more defendant deviated from the standard of review. Minn. Stat. § 145.682, subd. 2(1). The only exception to the affidavit requirement allows a plaintiff to forgo seeking an expert in exceptional cases where expert testimony would not be required to establish medical malpractice because the "act[] or omission[] complained of [is] within the general knowledge and experience of lay persons . . . ." *See Tousignant v. St. Louis Cnty.*, 615 N.W.2d 53, 58 (Minn. 2000) (quoting *Atwater Creamery Co. v. Western Nat'l Mut. Ins. Co.*, 366 N.W.2d 271, 279 (Minn. 1985)). Exceptional cases include situations in which sponges or metal clips are forgotten inside a surgical patient following surgery. *Hestbeck v. Hennepin Cnty.*, 212 N.W.2d 361, 364-65 (Minn. 1973); *see also Haile v. Sutherland*, 598 N.W.2d 424, 428 (Minn. Ct. App. 1999) (citation omitted) ("But expert testimony is necessary to support all but the most obvious medical malpractice claims.").

Without expert testimony to establish how one or more County Defendants fell below the applicable standard of care, Plaintiff cannot carry his burden. *See Tousignant*, 615 N.W.2d at 58; *Maudsley v. Pederson*, 676 N.W.2d 8, 14 (Minn. Ct. App. 2005) (finding general statements regarding causation insufficient to satisfy the expert affidavit requirement). Diagnosis of cancer is not so obvious as to fall within the "general knowledge" of lay persons. *See, e.g., Walberg v. Dep't of Veterans Affairs*, No. Civ. 01-62 (PAM/RLE), 2002 WL

31060378, at *1-2 (D. Minn. Sept. 12, 2002) (Magnuson, J.) (requiring oncologist with specific experience treating or diagnosing ocular cancer, rather than general oncologist).

*Teffeteller v. University of Minnesota* 645 N.W.2d 420 (Minn. 2002) is instructive as to how specific a doctor's expertise must be to satisfy the expert affidavit requirement. In *Teffeteller*, the plaintiff was a 14-year-old leukemia patient who had undergone a bone marrow transplant. *Id.* at 422. Plaintiff's expert was a double board-certified in pediatrics and pediatric critical care. *Id.* at 432 (Gilbert, J., dissenting). Because there was nothing in Plaintiff's expert's "curriculum vitae indicating he had treated cancer patients or patients who have undergone bone marrow transplants," the Court found him unqualified to render an expert opinion on a teenage cancer patient whose claim stemmed from cancer treatment. *Id.* at 427-28. In other words, even though the doctor was board certified in pediatric critical care, he was found to be unqualified to render an opinion on morphine toxicity stemming from the plaintiff's cancer treatment.

Because the record is devoid of expert testimony that any County Defendant fell below the applicable standard of care, the Court recommends the County Defendants' motion for summary judgment be granted and judgment be entered in their favor.

### 4.    Fifth Amendment

Plaintiff also arguably asserts a claim that his Fifth Amendment right to be free from self-incrimination was violated because he was forced to plead guilty to receive appropriate medical attention. Plaintiff's Fifth Amendment claim is barred by *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). The Supreme Court in *Heck* held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must

prove the conviction has been reversed on direct appeal . . . or called into question by a federal court's issuance of a writ of habeas corpus." *Id.*

Plaintiff's conviction was upheld on direct appeal. *Vogel v. State*, No. A10-901, 2011 WL 5896929 (Minn. Ct. App. Feb. 22, 2011). Furthermore, Plaintiff's federal petition for writ of habeas corpus has been denied. *Vogel v. Roy*, No. 12-CV-0088 (PJS/JJG), 2012 WL 5874480 (D. Minn. Nov. 20, 2012) (Schiltz, J.). The *Heck* Court reasoned that, if "judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence," the court must dismiss the case, absent evidence the "conviction or sentence has already been invalidated." *Heck*, 512 U.S. at 487. Because the gravamen of Plaintiff's Fifth Amendment claim would require finding his Fifth Amendment rights were violated, and such a finding would necessarily call into question the constitutionality of his conviction, the Court recommends the County Defendants' motion be granted and judgment be entered in their favor.

### 5.    Qualified Immunity

Courts apply the doctrine of qualified immunity by addressing "whether the allegations amount to a constitutional violation, and then, whether that right was clearly established." *Sanders v. City of Minneapolis*, 474 F.3d 523, 526 (8th Cir. 2007). Qualified immunity is a doctrine of federal law that protects individuals from suit, *Pearson v. Callahan*, 555 U.S. 223, 231 (2009), and, accordingly, applies to federal claims, *see Herts v. Smith*, 345 F.3d 581, 589 (8th Cir. 2003). If a plaintiff cannot establish a violation of a constitutional right, the Court need not determine whether the right is clearly established. *Jones v. Shields*, 207 F.3d 491, 494 (8th Cir. 2000). As discussed above, discovery has failed "to uncover

evidence sufficient to create a genuine issue as to whether the defendant has in fact committed [the alleged acts]." *Mitchell v. Forsythe*, 472 U.S. 511, 526 (1985).

To the extent Plaintiff intended to bring claims against the County Defendants in their individual capacity, the doctrine of qualified immunity applies. Accordingly, with respect to Plaintiff's federal claims, the Court recommends the County Defendants' motion for summary judgment be granted and judgment be entered in their favor.

### 6.    Official Capacity

The County Defendants next ask the Court to grant their motion based on Plaintiff's failure to adduce evidence supporting a direct claim against Aitkin County. Where a complaint is silent as to whether a lawsuit is against an individual in his personal or official capacity, the Eighth Circuit has instructed that the claim should be construed as an official-capacity claim. *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619-20 (8th Cir. 1995) (citing *Nix v. Norman*, 879 F.2d 429, 431 (8th Cir. 1989)). The holding in *Egerdahl* "requires that a plaintiff's complaint contain a clear statement of her wish to sue defendants in their personal capacities." *Id.* at 620. That requirement affords a defendant "prompt notice of his or her potential personal liability." *Nix*, 879 F.2d at 431. Further, the Supreme Court has held "[a]s long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (citing *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985)). To establish county or municipal liability under Section 1983, "a municipal 'policy' or 'custom' [must] cause[] the constitutional violation." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009); *Doe ex rel. Doe v. Washington Cnty.*, 150 F.3d 920, 922 (8th Cir. 1998).

Alternatively, a plaintiff may establish liability by showing a policy is facially lawful but has been adopted with "'deliberate indifference' to its known or obvious consequences." *Moyle*, 571 F.3d at 818 (citing *Seymour v. City of Des Moines*, 519 F.3d 790, 800 (8th Cir. 1992)). The court in *Moyle* acknowledged that the standard to elevate a facially lawful policy to "unlawful" requires a finding that the county maintained "'a policy in which the inadequacy is so obvious, and the inadequacy is so likely to result in the violation of constitutional rights' that the policymakers can be said to have been deliberately indifferent." *Id.* at 818-19 (citing *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)). Negligence is insufficient to establish liability. *Id.* at 819 (citation omitted).

Again, there is no evidence in the record of a custom, policy, or pervasive practice of depriving inmates of medical care. Moreover, Plaintiff has not even alleged such a wide-ranging conspiracy. Rather, Plaintiff's claims have focused on specific deficiencies with regard to *his* care. Thus, absent evidence in the record of an unconstitutional custom or policy, or a constitutional policy that has been reliably implemented in a way that results in the deprivation of constitutional rights, there can be no municipal liability. Accordingly, the Court recommends summary judgment be granted on any purported claim against Aitkin County.

### 7.      Official Immunity

Finally, the County Defendants assert they are entitled to official immunity with regard to any state law claims against them. In Minnesota, "a public official is entitled to official immunity from state law claims when that official is charged by law with duties that require the exercise of judgment or discretion." *Johnson v. Morris*, 453 N.W.2d 31, 41 (Minn. 1990). One exception to the doctrine of official immunity exists if the public official acted maliciously or willfully. *Id.* at 42. In the official immunity context, malice requires a showing

that the public official intentionally committed an act "that the official has reason to believe is legally prohibited." *Kelly v. City of Minneapolis*, 598 N.W.2d 657, 663 (Minn. 1999). If the public official must exercise discretion, he is entitled to official immunity. *Elwood v. Rice Cnty.*, 423 N.W.2d 671, 677 (Minn. 1988); *Kari v. City of Maplewood*, 582 N.W.2d 921, 923 (Minn. 1998) (excepting ministerial acts and malicious conduct from the doctrine of official immunity).

Here, the County Defendants acted in a discretionary, rather than ministerial, manner. Notably, none of the County Defendants actually rendered medical care. The only County Defendants are Sheriff Scot Turner and two jail administrators. While official immunity may not apply to the actual dispensation of medical care, *see Terwilliger v. Hennepin County*, 561 N.W.2d 909, 913-14 (Minn. 1997), it does apply to discretionary acts such as those in which the County Defendants engaged. The County Defendants were not engaged in the "simple execution of a specific duty arising from fixed and specific facts," which would be clearly unprotected as ministerial. *Id.* at 913 (citing *Elwood*, 423 N.W.2d at 677). Rather, the County Defendants were engaged in higher-level decisionmaking in which they were required to exercise their discretion in setting medical care policies. Because the County Defendants were engaged in the exercise of judgment and discretion in making complex decisions, those decisions are entitled to official immunity. Therefore, judgment on state law claims against the County Defendants should be entered.

## B. Motion to Strike Pleading (ECF No. 115)

Finally, the County Defendants move to strike Plaintiff's response to Defendants' Reply in Support of Motion for Summary Judgment (ECF No. 112). This motion is denied as moot, because the Court recommends granting Defendants' motion. In the alternative, this

motion is also denied on the merits. While an unsolicited memorandum of law is expressly prohibited by Local Rule 7.1(i), this District has consistently denied motions to strike aimed at "memoranda, affidavits, or anything else that is not a pleading for purposes of Civil Rule 12(f)." *Carlson Mktg. Grp., Inc. v. Royal Indem. Co.*, Civ. No. 04-CV-3368, 2006 WL 2917173, at *3 (D. Minn. Oct. 11, 2006) (Schiltz, J.); *see also Great Lakes Gas Transmission Ltd. P'ship v. Essar Steel Minn., LLC*, Civ. No. 09-CV-3037 (SRN/LIB), 2011 WL 1486033, at *2 (D. Minn. Apr. 19, 2011) (Nelson, J.). Accordingly, the County Defendants' motion to strike Plaintiff's untimely, unsolicited memorandum is denied.

### III.    PLAINTIFF'S MOTIONS

While the Court's recommendation the Defendants' motion for summary judgment be entered renders Plaintiff's non-dispositive motions moot, the presence of one last Defendant, Defendant Peterson, requires the Court to discuss the merits of Plaintiff's motions. As to the Defendants who have moved for summary judgment here, the following motions are denied as moot or, in the alternative, on the merits. As the following motions apply to Defendant Peterson, the motions are denied.

### A.    Plaintiff's Motion to Court for Order to Parties for Mediation or Arbitration (ECF No. 78)

Plaintiff's first motion asks the Court to order the parties to mediation or arbitration. In support of his motion, Plaintiff recounts the merits of his claims. At no point does Plaintiff offer justification for his motion, other than an oblique reference to "the Rules of the U.S. District Court, District of Minnesota." (Pl.'s Mot. to Compel Mediation or Arbitration at 3.)

Although this Court's Local Rules empower it to refer cases to arbitration, the power is limited to the legislative authorization contained in 28 U.S.C. § 654. D. Minn. LR 16.5(a)(2) ("The court authorizes the use of alternative dispute resolution processes in all civil

actions . . . except that the use of arbitration is authorized only as provided in 28 U.S.C. § 654.") Section 654 prohibits the referral of actions to arbitration where "the action is based on an alleged violation of a right secured by the Constitution of the United States." 28 U.S.C. § 654(a)(1). Here, Plaintiff asserts a violation of the Eighth Amendment through the County Defendants' deliberate indifference to a serious medical need. Accordingly, the Court may not refer this matter to arbitration.

The Court is afforded more latitude in referring matters to mediation, however. Section 654 prohibits only the referral of constitutional matters to arbitration, but it is silent on mediation. Moreover, the Local Rules' reference to § 654 is limited to arbitration, as well. Local Rule 16.5(b), on the other hand, allows the Court to require a mediated settlement conference. That power rests in the Court's discretion. D. Minn. LR 16.5(b) ("The court . . . *may* require additional mediated settlement conferences." (emphasis added)).

In light of this action's current procedural posture, the Court declines to order the parties to appear for a mediated settlement conference. Based on the above, the Court hereby denies Plaintiff's motion to compel arbitration or mediation.

### B.      Motion for Court-Appointed Medical Experts (ECF No. 107)

Citing Federal Rule of Evidence 706 Plaintiff asks the Court to appoint an oncologist to testify on his behalf. Plaintiff's motion is denied. Rule 706 provides for the appointment of an expert witness with the costs of such appointment shared by the parties at the Court's discretion. Fed. R. Evid. 706(c)(2).

Indeed, courts addressing the prepayment of expert fees by the judiciary have uniformly held that the Court is not authorized to pay such fees. *See, e.g.*, *Hannah v. United States*, 523 F.3d 597, 601 (5th Cir. 2008); *Brown v. United States*, 74 Fed. Appx. 611, 614-15

(7th Cir. 2003); *Boring v. Kozakiewicz*, 833 F.2d 468, 474 (3d Cir. 1987). Districts in this Circuit have also consistently held that indigent civil litigants are required to bear the costs of their own experts. *See, e.g.*, *Reyna v. Weber*, No. Civ. 11-4044, 2012 WL 2999768, at *2 (D.S.D. June 29, 2012); *Holloway v. Lott*, No. 4:08-cv-00821-GTE, 2009 WL 2778665, at *1 (E.D. Ark. Aug. 28, 2009) (citations omitted). This Court finds no reason to stray from the beaten path on this issue. In the same vein, the plain language of 28 U.S.C. § 1915, which provides the framework for litigants proceeding *in forma pauperis*, does not provide for court authorization and payment of expert witnesses.

Because the plain language of 28 U.S.C. § 1915 does not authorize payment of expenses other than court fees, and because courts have regularly held that indigent pro se civil litigants are not entitled to court-subsidized experts, Plaintiff's motion is denied.

### C. Motion to Compel Discovery (ECF No. 119)

Plaintiff next moves to compel Defendants' responses to discovery requests. While Plaintiff has not included a "verbatim recitation of each interrogatory, request, answer, response, or objection that is the subject of the motion, or a copy of the actual discovery document that is the subject of the motion," D. Minn. LR 37.1, the text of his memorandum asks the Court to compel Defendants to "provide discovery to him, and that the discovery include all information related to the defendants [sic] claims and defenses against plaintiff's claims," (Pl.'s Mem. Supp. Mot. Compel at 2.) Plaintiff also requests "any and all complaints, violations of law, allegations of misconduct, and any other information regarding civil suits or complaints filed against the defendants, including deliberate indifference to a serious medical need, medical malpractice[,] and gross negligence complaints." (*Id.*)

Plaintiff asserts he contacted Defendants and requested discovery on March 14, 2012. The pretrial scheduling order indicated: "discovery of any kind shall be commenced in time to be completed" by March 21, 2012. (Pretrial Sched. Order, Nov. 8, 2011, ECF No. 32.) Federal Rule of Civil Procedure 34 affords a party 30 days to respond to discovery. Fed. R. Civ. P. 34(b)(2)(A). Accordingly, Plaintiff's discovery request was not "commenced in time to be completed" by the discovery deadline. Plaintiff filed his motion on October 5, 2012. The pretrial scheduling order set a nondispositive motion deadline of April 5, 2012.

Because Plaintiff's discovery requests were not timely served and his motion to compel was tardy by six months, his motion is denied.

## IV. CONCLUSION

The Court recognizes that coping with a diagnosis of a life-threatening disease is extremely difficult. However, Plaintiff has simply failed to demonstrate liability on the part of any Defendant. The only reality supported by the record is that even early diagnosis would have been insufficient to "cure" Plaintiff. Accordingly, the Court recommends Defendants' motions for summary judgment be granted and the case against them be dismissed.

## V. RECOMMENDATION

Based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Plaintiff's Motion to Court for Order to Parties for Mediation or Arbitration (ECF No. 78) be **DENIED AS MOOT** as it pertains to the County Defendants;

2. Plaintiff's Motion for Court-Appointed Medical Experts (ECF No. 107) be **DENIED AS MOOT** as it pertains to the County Defendants;

3. Plaintiff's Motion to Compel Discovery (ECF No. 119) be **DENIED AS MOOT** as it pertains to the County Defendants;

4. The County Defendants' Motion for Summary Judgment (ECF No. 82) be **GRANTED**; and

5. The County Defendants' Motion to Strike Pleading (ECF No. 115) be **DENIED AS MOOT.**


Dated: January 8, 2013               s/ Jeanne J. Graham
                                     JEANNE J. GRAHAM
                                     United States Magistrate Judge


## NOTICE

Pursuant to District of Minnesota Local Rule 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by **January 28, 2013**. A party may respond to the objections within fourteen days after service thereof. Any objections or responses shall not exceed 3,500 words. The district judge will make a de novo determination of those portions of the Report and Recommendation to which objection is made.